20-1144-cv
Varga v. General Electric Company

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 4th day of February, two thousand twenty-one.

Present:     AMALYA L. KEARSE,
             ROSEMARY S. POOLER,
             GERARD E. LYNCH,
                     *Circuit Judges.*

_____

ADELE VARGA, Individually and on Behalf of all
others Similarly Situated,

                     *Plaintiff-Appellant*,

              v.                                        20-1144-cv

GENERAL ELECTRIC COMPANY, JEFFREY ROBERT IMMELT,

                     *Defendants-Appellees*.

_____

Appearing for Appellant:     Matthew W. H. Wessler, Gupta Wessler PLLC, Washington, DC.
                             Charles J. Crueger, Crueger Dickinson LLC, Whitefish Bay, WI
                             (*on the brief*).

                             Tyler W. Hudson, Wagstaff & Cartmell LLP, Kansas City, MO (*on
                             the brief*).

Appearing for Appellee:      Jaime A. Santos, Goodwin Procter LLP (James O. Fleckner,
                             Benjamin Hayes, *on the brief*), Washington, DC.

Appeal from the United States District Court for the Northern District of New York (Sharpe, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Adele Varga appeals from so much of the March 5, 2020 judgment of the United States District Court for the Northern District of New York (Sharpe, *J.*) as dismissed her putative class action complaint alleging that General Electric Company ("GE") and Jeffrey Robert Immelt failed to exercise their fiduciary duty of prudence to the participants of the GE Retirement Savings Plan in violation of the Employee Retirement Income Security Act ("ERISA"). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Varga, a GE employee, participates in GE's 401(k) retirement plan. *Varga v. Gen. Elec. Co.*, No. 18-cv-1449, 2020 WL 1064809, at * 1 (N.D.N.Y. Mar. 5, 2020). One of the 401(k)'s options is a GE Stock Fund, an employee stock option plan ("ESOP") that invests almost entirely in GE stock. *Id.* Varga invested in the GE Stock Fund in her 401(k) account. *Id.* Varga's complaint alleges that in January 2018, GE announced the liabilities of its two insurance subsidiaries were under reserved by approximately $15 billion and that, in addition to $3.5 billion in contributions already made to shore up those reserves at the end of 2017, it anticipated the need to contribute several billion dollars. *Id.* Following that announcement, GE's stock price decreased. Varga alleges that (1) GE's reinsurance subsidiaries plainly did not provide for adequate reserves for years, and GE and Immelt should have known of such shortcomings "by 2009, or thereafter;" and (2) GE failed to take corrective action to protect GE Stock Fund participants, either by closing the Fund to future participants, or publicly disclosing the underfunding by the close of 2009, or shortly thereafter." *Varga*, 2020 WL 1064809, at *1-2; App'x 25, 29 . Id. at *1-2.

The allegations in Varga's complaint are similar to those made in a 2006 putative class action brought by participants in the GE Stock Fund, *Cavalieri v. General Electric Company*, No. 06cv315, 2009 WL 2426001 (N.D.N.Y. Aug. 6, 2009). The *Cavalieri* lawsuit also alleged that GE and others failed in their fiduciary obligations by continuing to maintain the GE Stock Fund as a 401(k) plan choice "even though they knew that the value was inflated by GE improperly under reserving for the insurance liabilities by $5 billion to $10 billion." *Varga*, 2020 WL 1064809, at *1 (internal quotation marks omitted). The *Cavalieri* lawsuit settled in 2009. *Id.* The district court dismissed Varga's lawsuit for failure to state a claim that satisfied the pleading standards set forth in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014). This appeal followed.

ERISA imposes on plan fiduciaries the obligation to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. §1104(a)(1)(B). ERISA authorizes plan participants to sue fiduciaries who breach this duty of prudence and makes those fiduciaries personally liable for any losses to the plan resulting from any such breach. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2)-

2

(3). ERISA's protections extend to ESOPs, but ESOPs are exempt from ERISA's diversification requirements. *See* 29 U.S.C. §§ 1104(a)(2), 1107(b)(1).

To plausibly state a claim that an ESOP fiduciary possessing inside information about the company breached ERISA's duty of prudence, plaintiffs must allege "that a prudent fiduciary in the defendant's position could not have concluded that [the proposed alternative action] would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund." *Dudenhoeffer*, 573 U.S. at 429-30. This Court applied that standard in *Jander v. Retirement Plans Committee of IBM*, 910 F.3d 620 (2d Cir. 2018) ("*Jander I*"). There, plaintiffs sued when IBM's stock price fell after the sale of a subsidiary revealed the subsidiary was greatly overvalued. *See id.* at 623. Plaintiffs alleged that a prudent fiduciary would have disclosed overvaluation earlier. *See id.* Plaintiffs alleged that the stock traded in an efficient market, that petitioners knew the stock was overvalued, and that petitioners "had the power to disclose the truth to the public and correct the artificial inflation." *Id.* at 628 (internal quotation marks omitted). The Court read the complaint to "plausibly allege[] that disclosures could have been included within IBM's quarterly SEC filings." *Id.* at 629. The panel also credited plaintiffs' allegations that the overvaluation was "inevitable" once the sale was made public, which the Court found made it "far more plausible that a prudent fiduciary would prefer to limit the effects through prompt disclosure." *Id.* at 630.

Defendants were granted certiorari, and the Supreme Court vacated the Second Circuit's judgment. *Ret. Plans Comm. of IBM v. Jander*, 140 S. Ct. 592, 594-95 (2020). Finding the arguments raised focused on an issue not addressed below, the Court remanded, "leaving it to the Second Circuit whether to determine the[] merits" of the late-raised arguments. Id. at 595. On remand, the panel issued a per curiam reinstating its original opinion. *Jander v. Ret. Plans Comm. of IBM*, 962 F.3d 85, 86 (2d Cir. 2020) ("*Jander II*"). The Supreme Court denied certiorari. *Ret. Plans Comm. of IBM v. Jander*, —S. Ct.—, 2020 WL 6551787 (Nov. 9, 2020).

On appeal, Varga argues that the district court erred in dismissing her breach of the duty of prudence claim because, among other things, she adequately pleaded alternative actions that the fiduciaries could have taken that "would have protected the plan and its participants." Appellant's Br. at 42. Varga's complaint lays out two alternative actions the fiduciaries could have taken, "earlier disclosure and closure of the fund to additional investment." *Id*. As to the first alternative, Varga argues that a prudent fiduciary could not have concluded that disclosure would do more harm than good because GE's previous disclosures related to its insurance subsidiaries did not trigger a stock drop, and economic studies have shown that delayed disclosure triggers more severe stock drops. As to the second alternative, Varga argues that the 2009 settlement of *Cavalieri* "gave the fiduciaries a tailor-made pathway for closing the fund" without arousing concern from outside investors. Appellant's Br. at 48. Varga argues that these alternatives are on par with those found sufficient in *Jander*. We disagree.

The district court concluded that Varga failed to adequately plead alternative actions that the fiduciaries "could not have concluded . . . would do more harm than good." *Varga*, 2020 WL 1064809, at *3-*4. On appeal, Varga does not challenge the "could not" standard, instead arguing that *Jander*:

3

provide[s] clear and detailed guidance on the correct approach district courts within the circuit must take when assessing whether a complaint's allegations "state a duty of-prudence claim under ERISA because a prudent fiduciary . . . could not have concluded that corrective disclosure would do more harm than good."

Appellant's Reply Br. at 16 (quoting *Jander*, 910 F.3d at 628).

Though Varga contends that prolonged failure to disclose "would only increase the reputational damages once the issue was inevitably disclosed," App'x 29, the district court correctly observed that "Varga fails to allege any similar major triggering event" to the impending sale in *Jander* "that would make GE's eventual disclosure inevitable and instead relies on . . . a general allegation that since other insurers with under-funded long-term care liabilities 'inevitably' had to disclose their problems, GE would have to as well." *Varga*, 2020 WL 1064809, at *4 n.3. Varga's suggestion that the fiduciaries could have closed the fund in 2009 is similarly conclusory, unsupported by any factual matter suggesting that the fiduciaries could not have concluded that such an action would do more harm than good.

Because we conclude that Varga failed to adequately plead alternative actions that the fiduciaries could have taken, we need not address Varga's additional argument that the district court erred in concluding that Varga failed to adequately plead the fiduciaries knew or should have known about the shortfall in reserves.

We have considered the remainder of Varga's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4